At this time, we'll hear United States v. Roy. Thank you. We can wait a bit while it appears that your argument is not drawing the same audience. Actually, all those people were here for the Cohen sentence, and they just picked the wrong courtroom. I think the hubbub has died down. Good morning. Good morning. May it please the court. I'm Sandra Glover, assistant United States attorney from the District of Connecticut on behalf of the United States. And I'd like to reserve three minutes for rebuttal. Done. The evidence at trial proved that Carl Roy and Jamel Frank agreed to murder Anthony Parker and then did just that. Working together, they shot him to death in broad daylight while he sat in his car in Hartford. I want to make sure I understand exactly what happened. They surround the car on both sides, if I have that correct, with a fence in between one of them and the car but not the other. The record doesn't show where Mr. Roy was standing with respect to the fence. The car was in between. If you look in our appendix on page 1295 and 1296, there's a picture of the car at the crime scene, and there's a fence. And you'll see on both sides of the car, there's a fence. And Mr. Roy was on one side, and we don't know where Mr. Frank was. And then was there any verbal exchange before the shots were fired? According to, I believe, Mr. Owens, there was some sort of a verbal exchange. I believe it was Mr. Owens who testified that Mr. Parker said, I'm going to kill you or something to that effect. That's what I wanted to focus on. So if, in fact, they had only set out to rob him, but then he says, I'm going to kill you, then they would have had an independent reason at that point to start shooting him. But that wouldn't indicate necessarily a conspiracy to murder. It was just a reaction. One starts shooting, the other starts shooting, and they kill the victim. So doesn't this turn in part on whether there was sufficient information beforehand that a jury could infer beyond a reasonable doubt that there was a conspiracy to murder? Your Honor, there is certainly a view of the evidence that goes along the lines that you just described. But the question on a sufficiency review is not whether this is a robbery gone bad, but whether there was sufficient evidence to show that there was an agreement to murder. And I agree with that. But my question is, so if all we had, two guys surround the car, one on one side, one on the other. They have an interplay with the person in the car, one of the people in the car, who says, I'm going to kill you, and then they start shooting. In your view, would that by itself be enough to support a conspiracy to murder? I don't know if that by itself would be enough. Okay, that's my point. So what do you have? So what do we have beyond that? We have the testimony. We have evidence showing that this organization viewed Mr. Parker as a threat to the organization. We have the organization agreeing beforehand that they needed to take care of this threat. And we know that one of the shooters understood take care of to mean kill. And how do we know that? Because, A, he did it. B, he also told Mr. Owens earlier in the day, I'm going to go across the street and shoot up that car, which would suggest his intent was not to rob, but to kill him. And also, on page 1049 of our appendix. None of those conversations were, of course, with Mr. Roy. They were not. But taken with all of the evidence, they provide an insight into what Mr. Frank was talking about when he said, we need to take care of him. On page 1049 of our appendix, we have the trial testimony. And Mr. Frank, when he testified at trial, was presented with and reaffirmed the statements from his plea colloquy where he had pled guilty to Vicar murder. And he said, and this is reading the stipulation, that he and Roy shot and killed Anthony Parker because Parker posed a number of risks to them and other Wall Street members. Not because there was a robbery gone bad or because there was a verbal altercation, but because he was a threat and they needed to respond to that threat. And then, in addition to the take care of language, Mr. Roy comes to this murder bringing guns and gloves. They don't bring masks. These are people going to commit a murder and leave no witnesses and leave no evidence. They then left. They didn't try to rob him. So I'm looking, I'm glad you referenced the trial testimony. I'm looking at the testimony at Joint Appendix 1000, I'm sorry, Joint Appendix at 975 lines 9 through 20. Question, tell the jury what the discussion was involving you, Kendall Brown, and Carl Roy. What did you, Dash, what was the discussion? What did you say? What was decided? Answer, oh, that this dude is tripping and we need to see him for that. Question, I'm sorry, you had to what? Answer, we had to take care of him pretty much. Question, you had to take care? Answer, yeah, we was going to attempt to rob him as well since that's what he was trying to do. Now, if take care means murder, it would be rather unusual to then rob him after the murder, though not impossible. Of course, they didn't do that there in this case. They just murdered him. They didn't rob him. So isn't that inconsistent with the notion that there was an agreement to murder? I don't think so. I read this to mean that they planned to rob and murder him, and they didn't, perhaps because they got to the murder part faster than they planned. You're focusing on the words as well. I'm focusing on the words as well. Rob as well as murder, which we had already agreed and which Mr. Frank testified that was what they were there to do. And I think when you take all of the other evidence in totality and not in isolation and look in the general proposition that they agreed to do exactly what they did, the evidence was more than sufficient to support the jury's verdict. You've reserved rebuttal. We'll hear you then. I think I can still say good morning to the panel. Good morning. My name is Chris Doobie. I represent Mr. Roy on appeal, and just so the panel is aware, I did so at the time of his trial as well. This is a consolidated appeal, so there's some issues that I had, but to respond to what Ms. Glover was just arguing about, I think that we're being asked to consider too much based on what the government is believing with regard to the conspiracy conviction itself. Mr. Frank said what he said. He said our plan was to rob him. That's true, Judge. There's no question. But when taken in the context of what we had learned by the time he said that, where there was this incident of an apparent robbery near Mr. Roy's house at some point, and there was an incident of a robbery near Mr. Brown's house that Catherine Goggins, Mr. Brown's mother, testified to, those things are robberies. So the as well part requires us to now expand on something that had never been introduced. Surely it matters that no effort was made to rob. I mean, they picked their moment, so if they had any intention or real intention to rob, if that was the dominant purpose, they would have selected an opportunity when they could effect the robbery. Instead, they did it, and they either didn't bother to rob or they couldn't. So it looks like they did the one thing that they . . . no, they fulfilled a major part of their mission. I disagree only in as much as the mission part is the part that we're expanding what we know about what had happened. And as somebody . . . I mean, I have a little bit of an advantage. I was there, and when we met Judge Arderton's courtroom setup, I'm very close to the witness. Nobody expected Mr. Frank to say we were going to rob him. I was sitting there waiting for him to say the plan was to kill him, and he didn't. So I . . . You're talking about in addition to the testimony that we just went over, there was the testimony that Judge Arderton mentioned at 978. Explain to the jurors what happened then. You called Roy, and then what happened? I pretty much told him that Anthony Owens told me that Mr. Parker was coming to pick him up, and I just gave him the rundown. And when you say you gave him the rundown, what does that mean? Just explain that to the jury. Answer, that means I told him that I'm about to come to Hartford, and he was going to be with Anthony Owens, so it's our time. Question, and what was it that you attempted to do at that time? Question, well, what? When I seen Parker? Answer, right when you saw. Answer, I was going to rob him. Question, Mr. Parker, what did you intend to do? Answer, I was going to rob him. Question, just like he had tried to rob you? Answer, correct. So there, there's no as well, so to speak. It's flat out. Now, he's only talking about his intent. And he's not talking about their joint intent, but, of course, both have to intend to have a conspiracy. Correct. If the only thing that has been, we know about or had been discussed or even thought of through what Mr. Frank is saying himself is a robbery, that's what we're bound by. There's sufficient evidence to show they conspired to rob him. I don't dispute that. And if we were in a Connecticut state court, that would be a problem for Mr. Roy. But that was not what was pled by the government in this case, and that's not the theory that the government proceeded under at the time of trial. So merely because he didn't say, merely because he said rob and he didn't say kill is a huge distinction. But the government's limited by its proof there. So there is no evidence to show there was agreement to murder him. Let me go back to the government sort of acceded to my claim that what happened at the time might not be enough. But let me turn that around. So let's assume for the sake of argument that the two guys come there and all they're going to do is rob him. And then he says, the victim, I'm going to murder you. And they both then more or less simultaneously start shooting in a manner directed to killing him. Why isn't that circumstantial evidence that they formed an intent right then and there to murder him? When explained the way Your Honor explained it, I have a hard time telling you that you'd be wrong. I think though that in the context of this particular trial with this evidence, what Mr. Parker was saying was a threat because of the nature of his relationship, Mr. Parker's relationship with the Team Greece members and Mr. Roy and Mr. Frank and everybody else. I don't know that that was a literal threat. I don't know that that was a literal threat. But clearly, Your Honor, I would completely concede that something changed at some point that resulted in this shooting. And I'm admitting for the sake of this discussion that Mr. Roy was one of the shooters. But that aside, I still don't know that there's a sufficient amount of evidence to go beyond the rob part, merely because one of the people who claimed to have seen this and not have been involved in it himself is saying that that's what Mr. Parker said. So the jury, that sort of dovetails into one of my topics that's separate and apart from the conspiracy thing, is that Mr. Owens testified on the government's behalf. And I would submit that the jury had very little use for his testimony given the way that this trial went. He was there. He was an accessory to the murder, at least in terms of helping Mr. Frank. It was logical to think he was the second gunman as Mr. Frank was, which is how we defended the case, and I'm not asking this panel to agree with me about that by any stretch. But the context of it goes to what Your Honor is asking me about, I'll kill you. I don't know what that means. But I also don't know that we can reliably say that that's something that actually happened when we're being asked to say that more happened than what Mr. Frank said he was getting Mr. Roy involved in. So I think it cuts both ways, I suppose, Your Honor. I had asked what may be a silly question, is what is really at stake here? Your client has a life sentence. Is it whether he gets an additional life sentence or what? What is it? What is so much at stake? Is it the theory of conspiracy? So it's what we're involved in. It is really a theoretical decision as to what is enough. But in terms of parties directly, what is at stake? I don't think it's theoretical, at least to me, Your Honor, because I think there's reasons that I've submitted in my brief that there's problems with the substantive murder conviction or the Vicar conviction, the other count. So I don't know that the conviction can stand either way. So I don't want to simply concede that it's theoretical since he's got a life sentence since I have underlying arguments about the nature of his conviction. When the judge is on the speaker, I don't know exactly where to look. So, Your Honor, I think you make a good point, and had that been the only count and I wasn't taking issue with some of the problems as I see them with the underlying murder conviction, I suppose this would just be a nice day to spend in New York and there wouldn't be much purpose to going forward. But I do have issues, namely with the motive-ish element behind the Vicar murder conviction, which, if this Court were to agree, would make that argument important. It's an independent justification. It is. I totally agree. I hope that answers Your Honor's question with regard to that. I would— Yes. Okay, thank you. You know, I have about a minute and change left. I just would hope that this Court would look, and I know you will, with a careful eye at the motive argument that I made with regard to the substantive murder conviction in my brief. The government's—this isn't a typical state murder conviction. There's a definite motive element. And I would willingly concede, for the sake of this discussion, I mean, in all fairness, the government at our trial did prove that there was a gang and that Mr. Roy was affiliated or part of it. But to convict him of this, they need to show that, I think specific to our facts, that he was involved in Mr. Parker's murder to enhance his position within it, to enhance his position. He was already a member, so I don't—unless the government thought otherwise, and I think we could speak to that, he was already a member of the gang for the purposes of this proof. So I don't think that element applies. The problem is there's just no evidence that anybody said that that was the case. Mr. Frank specifically said he's not its leader, and Mr. Brown wasn't brought before the jury, and Mr. Howe and some of the other people, Mr. Owens had testified specifically about Team Grease, never said it was part of Mr. Roy's obligations to the other members to perform this. This was something that sort of came up out of thin air one morning in terms of Mr. Roy's involvement, and that there was never any pressure put on him. It was never told to him, if you do this, you'll move up or you'll be promoted from within. I've run out of time. I don't want to cut anybody off if they had any questions for me. Thank you. Thank you. And it's always a pleasure being here. Thank you, Your Honor. I'd like to finish with three points. First of all, we've had a lot of discussion about different ways that the evidence might be viewed and different ways that it might or might not lend itself to conspiracy or whether they agreed to murder or agreed to rob, and respectfully, that was for the jury. These arguments were made to the jury, and the question now is not did we disprove a robbery theory, did we, was the evidence also. The question is whether any reasonable juror could have concluded what you wanted, what you believe was the conspiracy. What about the point on the substance that counsel just made about where was the proof that this was going to enhance the defendant's position within the organization? Your Honor, on that I would like to point to something that we didn't emphasize wholly in our brief, but it's page 1049 of the appendix, and this is, again, Mr. Frank's testimony about why he committed this murder. And he actually said he and Roy, meaning Frank and Roy, shot and killed Parker because he posed a threat to them, and then skipping down a bit, in order to maintain their positions in the enterprise and protect the interests of the groups, members, and associates, the defendant and Roy killed Parker. He provided that testimony, and it was actually consistent with the evidence at trial. This was a group that saw Mr. Parker as a threat. They responded as a group. They got together and talked about the fact that they needed to respond, and then they responded as a group. On the day that Mr. Parker was killed, Mr. Frank called Mr. Brown first and said, hey, come help me. Mr. Brown doesn't answer his phone, so he goes to another member of the group, Carl Roy, picks up Carl Roy, who brings the supplies for the murder. They commit the murder together, and then after the murder, Mr. Roy goes to dispose the guns, and he calls in another member of Team Grease to get rid of them. They responded to a threat to their territory to maintain the integrity of their gang, to respond to threats to their gang. I want to finish to respond to Judge Calabresi's question about why are we here. I just want to emphasize that essentially we're here because we believe that the jury's verdict on both counts fully accounted for Mr. Roy's conduct, and not just that he murdered Mr. Parker, but he engaged in a conspiratorial agreement to murder, and the jury found that, and we believe that that verdict is entitled to respect and should be reinstated. Thank you. Thank you both. We'll reserve decision. In the case of Francis v. The Hartford Board of Education, we'll take that on submission. That's the last case on calendar. Please adjourn court.